HIRAM S. COBURN & others *vs.* JOSEPH BARDWELL & another.

Suffolk.     March 14, 1922. — June 9, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Contract*, Construction, Performance and breach.  *Equity Pleading and Practice,*
Decree.

In a suit in equity the plaintiffs, comprising the directors of a corporation and
the corporation, sought to enjoin the defendant from availing himself of cer-
tain privileges which were to be his only upon performance by him of a con-
tract in writing with the plaintiffs in which he was described as the party of
the second part and whose provisions required him "to proceed with the work
of building and demonstrating" "a machine equipped with the Coburn Patent
Flexible Stem" "without unnecessary delay," "involving the use of said pat-
ent stem, of such a character as, if reasonably possible, shall be a successful
working machine for the purpose of picking cotton in the field and to cause
said machine to be reasonably tested and demonstrated in the cotton fields.
The said party of the second part is to use reasonable efforts to construct such
a machine as shall be capable of picking cotton successfully and economically."
The contract also provided "That if, at the end of said period, the party of
the second part has not demonstrated the success of said machine so built by
him and equipped with the said patented flexible stem, then all rights of the
party of the second part hereunder shall be ended and terminated, and all
liabilities of the parties of the first part to the party of the second part here-
under shall likewise be ended and terminated." A judge who heard the suit
found that the defendant tried out a machine produced by him in a cotton
field in North Carolina, that it picked only a very small proportion of the
cotton in the section of the field which it traversed, and that unsuccessful
attempts were made to solve the problem. The judge concluded: "I cannot
find that in any sense of the word the defendant 'has demonstrated the success
of said machine.'" The plaintiff offered to extend the time within which the
contract was to be performed, but the defendant refused any extension, in-
sisting that the contract had been fully performed on his part. *Held*, that
   (1) A reasonable interpretation of the contract required the defendant to
construct a successful working machine;
   (2) The defendant had failed to perform the contract and the plaintiffs
were entitled to a decree;
   (3) The plaintiffs were not entitled to have the defendant broadly enjoined
"from injuring or attempting to injure" the plaintiffs' corporation, "its succes-
sors and assigns."
A provision of the contract above described was that, if the defendant deter-
mined that he was unable "to construct a successfully working machine,"
he should deliver to the plaintiff "all the machines, patents and plans which
he shall have made, without any payment therefor, except that the party

of the second part, his heirs, executors, administrators and assigns shall have the exclusive right to all benefits to be derived from the use and application of all patents or patentable ideas or devices originated by the party of the second part or any person in his employ for any purpose other than the use thereof in machines constructed for the purpose of picking cotton." *Held,* that the final decree should reserve to the defendant in accordance with the express provision of the contract "the exclusive right to all benefits to be derived from the use and application of all patents or patentable ideas or devices originated by the party of the second part or any person in his employ for any purpose other than the use thereof in machines constructed for the purpose of picking cotton."

BILL IN EQUITY, filed in the Superior Court on February 2, 1921, by Hiram S. Coburn, Lawrence Coburn, Oscar Storer, Harry E. Haskell, Harry E. Gerry and the Coburn Cotton Harvester Company, an Arizona Corporation, who were described as parties of the first part in a contract in writing hereinafter described, against Joseph Bardwell, described in that contract as party of the second part, and Harris G. Prouty, whom Bardwell had procured to assist him in performing the contract, the plaintiffs seeking injunctive relief protecting them from conduct of the defendants which would be proper if the provisions of the contract in writing had been performed by the defendant Bardwell, but which the plaintiffs alleged was improper and injurious to them because the contract was not performed, and also seeking a decree directing the defendants to do certain things required of Bardwell by the contract on his failure to perform that contract; also a

CROSS BILL by the defendants in the bill above described against the plaintiffs therein, seeking specific performance of the contract as one performed by the plaintiffs in the cross bill.

Material provisions of the contract, which was dated July 12, 1919, were as follows:

"That the parties of the first part being owners of more than a majority of all the outstanding stock of the Coburn Cotton Harvester Company, [an Arizona corporation] and being all of the directors of said company, as owners of said stock and as directors of said company in the name and behalf of said company hereby bargain, sell, transfer and convey unto the party of the second part, the exclusive right for said period [ending October 1, 1920,] to build and demonstrate a machine equipped with the Coburn Patent Flexible Stem and ·hereby authorize

the party of the second part to build and demonstrate said machine and to use in the construction thereof the Coburn Patent, the use of which for said purpose is hereby transferred to said party of the second part:

"That the party of the second part hereby agrees to proceed with the work of building and demonstrating such machine without unnecessary delay and entirely at the expense of the party of the second part:

"That if, at the end of said period, the party of the second part has not demonstrated the success of said machine so built by him and equipped with the said patented flexible stem, then all rights of the party of the second part hereunder shall be ended and terminated, and all liabilities of the parties of the first part to the party of the second part hereunder shall likewise be ended and terminated:

"That if said machine proves a success, it is hereby agreed [here follow provisions not now material] . . .

"The said party of the second part, agrees at his own expense to cause said proposed Massachusetts corporation to be formed in accordance with the foregoing plan and to construct a machine, involving the use of said patent stem, of such a character as, if reasonably possible, shall be a successful working machine for the purpose of picking cotton in the field and to cause said machine to be reasonably tested and demonstrated in the cotton fields. The said party of the second part is to use reasonable efforts to construct such a machine as shall be capable of picking cotton successfully and economically. Such machine or machines as the said party of the second part shall construct for the purpose herein stated shall be and remain at all times the property of the said Arizona Corporation, its successors and assigns, and the said corporation its successors and assigns shall have the right to secure patents for the same in United States of America and in all other countries of the world, the party of the second part agreeing to pay for the securing of said patents in the United States of America, and to execute or cause to be executed such papers as shall be required for the purpose of securing said patents in the United States and in all other countries in which the said corporation, its successors and assigns shall desire to secure patents.

"In the event that, after constructing and testing one or more of said machines, the party of the second part shall determine that he is unable to construct a successfully working machine for the picking of cotton and shall desire to discontinue his efforts in attempting to construct such a machine for said purpose, then the said party of the second part shall deliver to the said Arizona Corporation, its successors and assigns, all the machines, patents and plans which he shall have made, without any payment therefor, except that the party of the second part, his heirs, executors, administrators and assigns shall have the exclusive right to all benefits to be derived from the use and application of all patents or patentable ideas of devices originated by the party of the second part or any person in his employ for any purpose other than the use thereof in machines constructed for the purpose of picking cotton. . . ."

In the Superior Court, there was a hearing by *Lawton,* J. Material facts found by him are described in the opinion. By his order a final decree was entered which, besides awarding costs to the plaintiff, was as follows:

"1. The defendant Harris G. Prouty is hereby ordered to assign and transfer unto The Coburn Cotton Harvester Company all the rights which he has in the patent heretofore applied for in the names of Hiram S. Coburn and the said Prouty covering the cotton harvester machine built by the defendants, and in the invention for which said patent has been applied for; and the defendants and each of them are hereby ordered to assign and transfer unto The Coburn Cotton Harvester Company all their interest, both jointly and severally, in any patentable invention made by them or either of them in connection with or in regard to cotton harvester machines.

"2. The defendants are hereby ordered to deliver forthwith to The Coburn Cotton Harvester Company all the machines and material delivered to them by said corporation, or by the plaintiff Hiram S. Coburn.

"3. The defendants are hereby ordered to execute and deliver to The Coburn Cotton Harvester Company a transfer of all their rights in the cotton harvester machine constructed by them.

"4. The defendants are hereby enjoined from forming or attempting to form a corporation for the purpose of taking over

the property of the plaintiff corporation, and are further enjoined from transferring or attempting to transfer any patent or patentable invention covering or in connection with the cotton harvester machine as constructed by them to any person or corporation except to the plaintiff corporation.

"5. The defendants and each of them are hereby enjoined from injuring or attempting to injure The Coburn Cotton Harvester Company, its successors and assigns."

The defendants appealed.

The case was submitted on briefs.

*W. J. Coughlan & D. R. Coughlan*, for the defendants.

*O. Storer*, for the plaintiffs.

DE COURCY, J. The bill and cross bill raise questions of the interpretation and performance of a written contract, dated July 12, 1919. It was made between the individual plaintiffs, comprising all the directors of The Coburn Cotton Harvester Company, and the defendant Bardwell; with whom the defendant Prouty was subsequently joined with the assent of the plaintiffs. The provisions of the agreement, so far as now material, are as follows: The Harvester company is the owner of the Coburn flexible stem, which is a spiral strip of metal, with teeth bent into minute hooks, designed to be used in a machine for picking cotton in the field. The directors, holding a large majority of the outstanding stock of the corporation, and in its name and behalf, transferred to Bardwell the exclusive right, until October 1, 1920, to construct and demonstrate a machine equipped with said patent. In the event of his producing a successful machine, a Massachusetts corporation was to be formed, the property of the plaintiff corporation was to be transferred to it, and he was to receive a certain proportion of its capital stock. If he should fail to construct a successfully working machine, he was to deliver the machines, patents and plans to the plaintiff corporation.

The trial judge made these findings of fact, among others. The Coburn stem is designed to be pushed into or upon the full cotton boll, and on being pulled back the teeth or hooks are expected to pull the cotton off. Much time was spent by the defendants in attempting to produce an eccentric movement which would withdraw the stem from the cotton boll while the machine

was travelling forward, without breaking the plant. After the details had been completed, and a patent applied for, the machine was taken to a cotton field in North Carolina, and tried out on September 29, 1920. It picked only a very small proportion of the cotton in the section of the field which it traversed. Attempts were made to solve the problem by modifying the length, number and position of the stems, but the judge finds that it was not so solved. He adds: "I cannot find that in any sense of the word the defendants 'have demonstrated the success of said machine.'" The plaintiffs offered to extend the time within which the contract was to be performed, but the defendants refused any extension, insisting that the contract had been fully performed on their part.

It seems plain that a reasonable interpretation of the contract required the defendants to construct a successful working machine, one capable of picking cotton in the field. This they failed to do. Even on their construction of the contract, that they were only to construct a machine which would properly operate the patent stems, we cannot say that the decree was unwarranted, in view of the findings made by the trial judge. And for the same reason the cross bill was dismissed rightly.

In our opinion, however, the form of the decree should be modified. We find nothing in the record to call for the broad and indefinite fifth paragraph, and this should be omitted. And the first paragraph should be amended by reserving to the defendants, in accordance with the express provision of the contract "the exclusive right to all benefits to be derived from the use and application of all patents or patentable ideas or devices originated by the party of the second part or any person in his employ for any purpose other than the use thereof in machines constructed for the purpose of picking cotton." An appropriate modification of the decree is to be made, and as thus modified, it is to be affirmed with costs.

*Ordered accordingly.*